# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE HINSON, | 1:09-cv-01293-AWI-SMS (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES D. HARTLEY, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his 1989 conviction for second degree murder. Petitioner was sentenced to fifteen years to life, plus three concurrent years for using a weapon and having served two prior prison terms. (Exhibit 1, to Answer.)

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he challenges Governor Schwarzenneger's 2007 decision finding him unsuitability for release on parole.

Petitioner appeared for a parole hearing on October 3, 2006, and the Board of Parole Hearings' (BPH) found him to be suitable for release. On February 22, 2007, the Governor reversed the BPH's decision and found Petitioner to be unsuitable for parole.

1

1   In 2007, Petitioner filed a petition for writ of habeas corpus in the Kern County Superior
2   Court challenging the Governor's decision. (Exhibit 2, to Answer.)  The superior court denied
3   the petition finding the Governor's decision was supported by some evidence citing (In re Tripp,
4   150 Cal.4th 306, 315 (2007) and In re Rosenkrantz, 29 Cal.4th 616, 626 (2002)).  (Exhibit 3, to
5   Answer.)

6   Petitioner then filed a habeas corpus petition in the California Court of Appeal, which
7   was summarily denied. (Exhibits 4 & 5, to Answer.)

8   In December 2008, Petitioner filed a petition in the California Supreme Court. (Exhibit 6,
9   to Answer.)  The petition was summarily denied. (Exhibit 7, to Answer.)

10  Petitioner filed the instant federal petition for writ of habeas corpus on July 24, 2009.
11  (Court Doc. 1.)  Respondent filed an answer to the petition on October 27, 2009, and Petitioner
12  filed a traverse on November 19, 2009.  (Court Docs. 10, 11.)

STATEMENT OF FACTS[1]

On the evening of July 26, 1989, Petitioner stabbed and killed Mike McKnight after engaging in a physical altercation with him over money.  The initial altercation began in the parking lot of an apartment complex.  Witnesses saw Petitioner get out of the passenger side of a car and run toward Mike.  The men punched each other.  George then stabbed Mike several times and fled to a nearby residence.  The occupants of the residence allowed Petitioner to use their telephone to make several calls, and he subsequently called a taxicab.  The couple noticed that Petitioner had blood on him, but he did not appear to have any wounds.  Petitioner told them that he had been robbed, and he hid in a closet located in the complex before knocking on their door.  After Petitioner left, the couple reported the incident to the police.  They also found a knife in the closet that Petitioner hid in.  When police arrived, Mike was suffering from multiple stab wounds, and he eventually died as a result of a fatal stab wound to the chest area.
(Exhibit 2, to Answer, Attachment 1.)

---

[1] This information is taken from the Governor's February 22, 2007, decision. (Exhibit 2, to Answer, Attachment 1.)

DISCUSSION

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

3

1  *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
2  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
3  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
4  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
5  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

6        Finally, this Court must consider whether the state court's decision was "contrary to, or
7  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
8  72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
9  grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
10 Court on a question of law or if the state court decides a case differently than [the] Court has on a
11 set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.
12 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
13 state court identifies the correct governing legal principle from [the] Court's decisions but
14 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
15 413.

16       "[A] federal court may not issue the writ simply because the court concludes in its
17 independent judgment that the relevant state court decision applied clearly established federal
18 law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.
19 A federal habeas court making the "unreasonable application" inquiry should ask whether the
20 state court's application of clearly established federal law was "objectively unreasonable." Id. at
21 409.   Petitioner has the burden of establishing that the decision of the state court is contrary to
22 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
23 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
24 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
25 state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
26 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

27       AEDPA requires that we give considerable deference to state court decisions. The state
28 court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

1 interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
2 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

3     In reversing the Board's finding that Petitioner was suitable for release on parole, the
4 Governor found that the circumstances of the commitment offense, institutional misconduct and
5 prior criminal history rendered him unsuitable. (Exhibit 2 to Answer, Attachment 1.)

6     In this instance, the last reasoned state court decision of the Kern County Superior Court
7 cited to (In re Tripp, 150 Cal.4th 306, 315 (2007) and In re Rosenkrantz, 29 Cal.4th 616, 626
8 (2002), and found some evidence supported the Governor's decision finding Petitioner unsuitable
9 for release on parole.  Ylst v. Nunnemaker, 501 U.S. 797, 804-805 (1991); see also Exhibit 3, to
10 Answer.)

11 II.    Review of Petition

12     A parole release determination is not subject to all the due process protections of an
13 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
14 also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural
15 protections that particular situations demand). "[S]ince the setting of a minimum term is not part
16 of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not
17 constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at
18 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole
19 board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive
20 advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an
21 "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the
22 inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the
23 Board must be supported by "some evidence" having an indicia of reliability. Superintendent,
24 Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th
25 Cir.1987).

26     "In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not
27 comport with 'the minimum requirements of procedural due process,' unless the findings of the
28 prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454

(1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)." <u>Sass</u>, 461 F.3d at 1128.  In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence.  <u>Id</u>.  Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board.  <u>Id</u>., *citing* <u>Superintendent v. Hill</u>, at 455-56.  Although <u>Hill</u> involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term."  <u>Id</u>., *citing* <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in <u>Greenholtz</u>, Petitioner was provided all that is required.  Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied.

Article 5, section 8(b) of the California Constitution, allows the Governor to review the decision of the Board and enables him to affirm, modify, or reverse the decision on the basis of

the same factors that the Board is required to consider.  See Cal. Const. art. 5, § 8(b); In re Rosenkrantz, 59 P.3d 174, 210 (Cal. 2002).  Accordingly, the Governor's decision to reverse a parole grant is reviewed under the same due process principles utilized to review the Board's denial of parole.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008).  The applicable standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[2]

With regard to the commitment offense, Governor Schwarzenegger found it was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering and life.[3]  The Governor quoted from the probation report which stated that Petitioner was observed

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

[3] Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

7

"rushing" the victim to engage in a physical altercation with him.  He then stabbed the victim several times and fled the scene.  Petitioner had the victim's blood on his body, and when he called a taxicab, he was overheard stating, "I got him.  I got him."  Petitioner also lied after the stabbing by claiming he was the victim of a robbery.  Meanwhile, the victim was left to die from multiple stab wounds.  In light of these circumstances, there is some evidence to support the Governor's finding that the murder demonstrated an exceptionally callous disregard for human suffering and life, and as explained *infra*, it remained indicative of his present dangerousness given his prior criminal history and institutional misconduct.

      The Governor also pointed out that Petitioner had a long criminal history which began when he was a juvenile in 1975.  Petitioner was initially adjudicated for grand larceny in Florida.  In 1975, Petitioner was sentenced to the California Youth Authority for robbery.  Thereafter, Petitioner committed forgery, firearm offenses, numerous drug offenses, and repeatedly violated parole.  In addition, he was on parole at the time of the commitment offense.   Given that Petitioner's criminal history continued over a span of almost twenty years and included prior prison terms, some evidence supports the Governor's finding that the murder remains indicative of Petitioner's present dangerousness.  15 Cal. Code Regs. § 2402(b).

      Pursuant to section 2402(c)(6), the Governor also considered Petitioner's institutional behavior, which includes rules violations for gambling, bookkeeping, manufacturing alcohol, refusing to submit to a urinalysis test, and receiving a tattoo.  Although Petitioner had not been disciplined for several years, the Governor found his prior misconduct remained predicative of his present danger with some evidence supporting this finding.  Prior to entering prison, Petitioner's failure to abide by the law spanned a period of almost twenty years and continued well into his incarceration.  Therefore, it was reasonable for the Governor to find that a longer period of remaining discipline-free is needed before his prior institutional misconduct can be deemed of little to no predicative value of his present dangerousness to the public.

---

    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

8

The Governor also considered the factors in support of a finding of suitability and commended Petitioner for his credible gains.  The Governor acknowledged that Petitioner earned his GED in 2004, and in January 2006, he completed adult education courses.  In addition, he participated in vocational training and earned certificates as a skilled wood machinist and graphic arts.  Petitioner also engaged in self-help therapy, including participation in My Change Plan, Self Worth, Thinking Errors, Coping Skills, Relationships/Communication, Anger, Life Management, Values of Responsible Living, and Christian-faith-based programs.  Petitioner also participated in Alcoholics Anonymous and Narcotics Anonymous.  Petitioner engaged in extra-curricular activities such as Bible study and work in the prison chapel.  The Governor also pointed out that Petitioner received numerous laudatory chronos for his strong work ethic as a wood machinist, and for being an exemplary inmate. (Exhibit 2, to Answer, Attachment 1.)  In addition, Petitioner maintained solid relationships with his family and friends and had solid parole plans.  (Id.)

Contrary to Petitioner's claim, the Governor did not rely solely on the immutable circumstances of the commitment offense and prior criminal history; he also cited Petitioner's institutional behavior.  There is some evidence to support the Governor's finding that Petitioner would pose an unreasonable risk to public safety based on the callous nature of the commitment offense, his lengthy criminal history, and institutional misconduct.  Moreover, at the time of the 2006 hearing, Petitioner had been incarcerated for 16 years on his 18-years-to-life sentence.  In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir. 2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916.  Nevertheless, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole

9

because in each of these cases the prisoner had not yet served the minimum term of his sentence.

In sum, this Court cannot conclude that the Governor's denial of parole has resulted in a due process violation when considering, in combination, the circumstances of the commitment offense, prior criminal history, and institutional misconduct.  Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

<u>RECOMMENDATION</u>

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.	The instant petition for writ of habeas corpus be DENIED; and

2.	The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 24, 2010**            /s/ Sandra M. Snyder
                                  UNITED STATES MAGISTRATE JUDGE